AMBER PROPERTIES, LTD., a Colorado corporation, Plaintiff–Appellee and Cross–Appellant,

v.

HOWARD ELECTRICAL AND MECHANICAL COMPANY, INC., a Colorado corporation, Defendant–Appellant and Cross–Appellee.

No. 85CA1137.

Colorado Court of Appeals,
Div. IV.

Sept. 1, 1988.

Rehearing Denied Oct. 13, 1988.

Certiorari Dismissed March 27, 1989.

**44**

Timothy R. Brownlee, Stephen E. Tinkler, Denver, for plaintiff-appellee and cross-appellant.

Wolf & Slatkin, P.C., Albert B. Wolf, Jean C. Arnold, Denver, for defendant-appellant and cross-appellee.

HUME, Judge.

Defendant, Howard Electrical and Mechanical Company, Inc. (Howard), appeals from a judgment entered on jury verdicts

that awarded plaintiff, Amber Properties, Ltd. (Amber), damages for fraud and deceit and for conversion. Plaintiff cross-appeals, challenging the court's order dismissing its claims for exemplary damages. We affirm the judgment for actual damages, but vacate the court's order dismissing Amber's claims for exemplary damages, and remand the cause for trial on that issue.

The parties' dispute arose from Howard's activities as a subcontractor for the installation of electrical service in two condominium construction projects on Amber's property. Amber advanced several theories for recovery, but only those relating to Howard's conversion of Amber's money or property in connection with the Governor's Place project, and Howard's deceit in connection with the Windsor project are pertinent to this appeal. Both of those claims involve money that Howard received from the Public Service Company of Colorado (PSC) for its installation of secondary electrical systems in the respective condominium buildings.

With respect to the Governor's Place project, Amber sought to recover proceeds which Howard had received from PSC for Howard's purported sale of the secondary system belonging to Amber. With respect to the Windsor project, Amber sought to recover funds that Howard received by allegedly fraudulently misrepresenting or concealing facts relating to the value of the secondary system, and of a consequent rebate which Howard obtained from PSC, to Amber's detriment.

## I.

Urging that the evidence was insufficient to sustain Amber's claims, Howard contends that the court erred in denying its motions for directed verdict, and for judgment notwithstanding the verdicts or for new trial. We disagree.

Our review of the record satisfies us that although the evidence was disputed, when viewed in the light most favorable to Amber, it was sufficient to support verdicts for Amber on both claims. Therefore, the court neither erred as a matter of law nor abused its discretion in denying defen-dant's motions. *See Nettrour v. J.C. Penney Co.,* 146 Colo. 150, 360 P.2d 964 (1961). And, since the jury's verdicts are supported by substantial evidence, we must sustain them on appeal. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882 (Colo.1986).

■ We are not persuaded by Howard's argument that the court's admission of opinion testimony from plaintiff's witnesses Macdonald and Butterweck constituted reversible error. Every person with personal knowledge of matters about which he testifies is competent to be a witness, and the sufficiency of evidence to establish a witness' qualifications and knowledge to express an opinion is a matter to be determined by the trial court in the exercise of its discretion. *Wise v. Hillman,* 625 P.2d 364 (Colo.1981). There is evidence in the record supporting the court's determinations of the witnesses' qualifications and knowledge, and we perceive no prejudicial error in the admission of the testimony. *See* CRE 103.

## II.

■ Howard also contends that the court erred in awarding pre-judgment interest on the amounts the jury determined were either converted or obtained by misrepresentation or concealment from the date that Howard received them. We are not convinced.

The cases upon which Howard relies predate the 1979 enactment of § 5–12–102, C.R.S. (1987 Cum.Supp.), which is applicable here. Beginning in July 1979, the statute expressly allowed the assessment of pre-judgment interest for the value of money or property wrongfully taken or withheld, even if the amount so taken or withheld was unliquidated prior to the entry of judgment. *See* § 5–12–102(1), (2), and (3), C.R.S. (1987 Cum.Supp.). We conclude that the court correctly applied the statute in awarding Amber pre-judgment interest in this case.

## III.

■ We also conclude, contrary to Howard's contention, that the court did not

err in refusing to instruct the jury that waiver and release could be considered as defenses to plaintiff's tort claims. The court correctly determined that the settlement agreement upon which Howard sought to base those defenses related only to the settlement of contractual claims which existed between Amber, the general contractor, and Amber's lender. The purpose of the settlement agreement was not to waive or release Amber's independent tort claims against Howard.

## IV.

Amber contends, in its cross-appeal, that the court erred in dismissing and refusing to submit to the jury its claims for exemplary damages. We agree.

The trial court's order dismissing plaintiff's claims for punitive damage awards had three premises: (1) that to constitute wanton and reckless conduct, a course of conduct, rather than a single isolated event or transaction, must appear; (2) that the plaintiff must show more than simple actionable fraud to make out a colorable claim for punitive damages; and (3) that plaintiff had failed to present sufficient evidence of defendant's financial capacity to enable the jury appropriately to fix the amount of punitive damages, and to enable the court to evaluate the propriety of any award the jury might make.

■ While evidence of a continuing course of conduct may buttress a claim for exemplary damages, the absence of such evidence does not preclude such an award if the statutory elements are met by other sufficient proof. *See Mince v. Butters*, 200 Colo. 501, 616 P.2d 127 (1980); *Mari v. Wagner Equipment Co.*, 721 P.2d 1208 (Colo.App.1986); *Clark v. Morris*, 710 P.2d 1130 (Colo.App.1985) (each upholding an award of exemplary damages arising from a single transaction).

■ The injured party need prove only "circumstances of fraud" surrounding a tortious act resulting in damages. The elements of "circumstances of fraud" are identical with the necessary elements of fraud. *See Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984).

■ Prior to the enactment of the Colorado "tort reform legislation" in 1986, evidence of an offending party's financial condition was held relevant and admissible for the fact finder's consideration in determining the appropriateness and amount of an award of punitive damages. *See Frick v. Abell*, 198 Colo. 508, 602 P.2d 852 (1979); *Coale v. Dow Chemical Co.*, 701 P.2d 885 (Colo.App.1985). *Cf.* § 13–21–102(6), C.R.S. (1987 Repl.Vol. 6A). But such evidence has never been held to be an element which must be proved to sustain a claim for punitive damages, and awards of exemplary damages have been upheld by Colorado's appellate courts without any consideration of the offending party's economic status. *See Mari v. Wagner Equipment Co.*, supra; *Evans v. Thompson*, 762 P.2d 754 (Colo.App.1988).

It should also be noted for purposes of trial upon our remand that, in 1986, the General Assembly added the following provision to the exemplary damage statute:

"In any civil action in which exemplary damages may be awarded, evidence of the income or net worth of a party shall not be considered in determining the appropriateness or the amount of such damages." Section 13–21–102(6), C.R.S. (1987 Repl.Vol. 6A).

That amendment should be followed upon remand.

We thus conclude that none of the trial court's reasons for dismissing Amber's claims for punitive damages was correct. To determine whether the dismissal was correct in spite of the court's flawed analysis, we must examine the record, and apply the correct standard to the evidence.

Exemplary damages are available in Colorado only pursuant to statute. Section 13–21–102, C.R.S. (1987 Repl.Vol. 6A); *Kaitz v. District Court*, 650 P.2d 553 (Colo. 1982). And, whether there is sufficient evidence to justify the submission of that issue to the fact-finder is a question of law.

■ If the evidence, viewed in a light most favorable to the injured party, is such

that a jury could find, beyond a reasonable doubt, that injury-causing tortious conduct was attended by circumstances of fraud or malice or a wanton and reckless disregard of the injured party's rights and feelings, then the court is required to submit the question to the jury. *See Palmer v. A.H. Robins Co., supra.*

■ The simple taking of another's property under an erroneous claim of right and over the protest of its possessor is insufficient to establish grounds for exemplary damages in a conversion action. *See American National Bank v. Etter*, 28 Colo.App. 511, 476 P.2d 287 (1970). But, if the surrounding circumstances indicate that the taking was wrongful, and was accomplished with reckless disregard of the injured party's rights or feelings, or was attended by circumstances of fraud, the issue should properly be submitted to the fact-finder. *See Palmer v. A.H. Robins Co., supra; Clark v. Morris, supra.*

With respect to the conversion claim, there is evidence that after Howard included the cost of the secondary electrical system for Governor's Place in its subcontractor's bid, and received payment for the installation of that system from Amber through the general contractor, it then purported to convey the same system to PSC for $115,806.10, without Amber's authority or knowledge, and withheld the proceeds of the sale from Amber.

With respect to the fraud claim, the evidence is undisputed that Howard included the cost of installing the secondary electrical system for the Windsor building in its subcontractor's bid. After the bid was submitted, Howard's representative met with the general contractor and the owner's agent specifically to discuss the matter of payment for the secondary system. At that meeting an agreement was struck to reduce the electrical subcontract by $66,000, representing the approximate cost of the secondary system, which subsequently was to be deleted from the contract by a change order.

Evidence was presented that the $66,000 figure was reached after Howard represented that its estimate of the cost of the secondary system to be installed was approximately $60,000, which, pursuant to the parties' agreement and change order, it would receive directly from PSC. However, the evidence further indicated that at the time Howard made that representation it was aware that the system's value was far in excess of $66,000; that subsequently Howard submitted proposals to PSC seeking significantly larger amounts; that ultimately it received from PSC $189,602.76 for the system; that when Amber learned of and confronted Howard about the discrepancy between the represented cost adjustment and the amount actually paid by PSC, Howard initially attempted to justify the difference by stating that PSC had required substantially more work than contemplated; and that in fact the work actually performed was substantially the same as that contained in Howard's original bid to Amber's general contractor.

■ While there is substantial conflicting evidence in the record, the evidence described above is sufficient to support a finding, beyond a reasonable doubt, that Howard's acts were attended by circumstances of fraud, malice, or a wanton disregard of Amber's rights. Accordingly, the order dismissing Amber's claims for punitive damages must be vacated.

The judgment for actual damages is affirmed, and the order dismissing the claim for exemplary damages is vacated. The cause is remanded for trial on Amber's claims for punitive damages only. Upon trial, the court shall advise the jury about the nature of Amber's conversion and deceit claims, that Howard's liability pursuant to those claims has been determined, and that actual damages have been awarded on each of the claims, including the amount of each award; and it shall instruct the jurors only on the law relating to the issues concerning exemplary damages.

PIERCE and NEY, JJ., concur.