Christine C. **MARTINEZ,**
**Plaintiff–Appellant,**

v.

Paulette Ann **SHAPLAND,**
**Defendant–Appellee.**

No. 90CA2142.

Colorado Court of Appeals,
Div. III.

Feb. 27, 1992.

Rehearing Denied April 2, 1992.

Certiorari Denied Aug. 10, 1992.

E. Ronald Beeks, Evergreen, for plaintiff-appellant.

Anderson, Campbell & Laugesen, P.C., J. Fern Black, Teresa W. Seymour, Denver, for defendant-appellee.

Opinion by Judge JONES.

In this negligence action, plaintiff, Christine C. Martinez, sought damages for injuries arising from an automobile accident in which defendant, Paulette Ann Shapland, ran a stop sign and broadsided the vehicle plaintiff was driving. The jury found that defendant's negligence had caused injuries and losses to plaintiff, but awarded no damages. Plaintiff moved for a new trial on the issue of damages, and she appeals the denial of that motion, as well as the judgment entered on the jury verdict. We reverse and remand for a new trial.

### I.

Plaintiff contends that the trial court erred in not granting a new trial as to damages because the award of no damages is unsupported by the evidence. We agree.

■ A jury's verdict will not be set aside on the basis of inadequacy unless, in view of the evidence, it can be said with certainty that the verdict is grossly and manifestly inadequate, or unless the amount of the verdict is so small as to indicate clearly that the jury neglected to consider all the evidence pertaining to the plaintiff's injuries. *Mince v. Butters*, 200 Colo. 501, 616 P.2d 127 (1980).

■ Here, plaintiff introduced evidence indicating that, as a result of the accident in which her head impacted and broke the windshield, she sustained injuries to her head, neck, and back. The evidence regarding the nature and extent of these injuries was conflicting, and the jury was, thus, entitled to infer that these injuries were not compensable.

In addition to these claims, however, plaintiff also presented evidence that she had developed a condition in her jaw known as temporomandibular joint syndrome (TMJ), involving derangement of the joint and injury to the related muscle groups. In response, defendant presented medical testimony from two oral surgeons. While these witnesses concluded that plaintiff had not sustained an internal derangement of the TMJ, both, however, found that plaintiff had sustained an injury to her

neck muscles which resulted in pain with each movement of her jaw, consistent with a condition of TMJ. Defendant also presented testimony from a neurologist, who stated that he had found objective indications of a TMJ injury.

After its deliberations, the jury filled out Verdict Form B, which indicated that the plaintiff had incurred injuries and losses, that defendant was negligent, and that the defendant's negligence was the cause of plaintiff's injuries. The jury nevertheless concluded, under section 4 of the verdict form, that the plaintiff had incurred zero non-economic losses or injuries.

Given the undisputed evidence from witnesses for both parties regarding the existence and nature of the TMJ injury, the jury's failure to award any damages for non-economic losses, particularly pain and suffering, renders the verdict inadequate as a matter of law. *See Denton v. Navratil*, 170 Colo. 158, 459 P.2d 761 (1969). The inadequacy of this portion of the verdict indicates that the jury failed to follow the court's instructions on damages. *Kistler v. Halsey*, 173 Colo. 540, 481 P.2d 722 (1971); *Villandry v. Gregerson*, 824 P.2d 829 (Colo.App.1991). Thus, the verdict as to damages cannot stand and plaintiff is entitled to a new trial on damages.

### II.

Plaintiff raises certain other allegations of error concerning the trial court's instructions to the jury that may arise again on retrial.

### A.

■ Plaintiff contends the trial court erred in failing to instruct the jury on loss of future earning capacity. Defendant asserts that, because a loss of future earning capacity was not supported by the evidence, the trial court properly refused to instruct the jury on such a loss as an element of plaintiff's damages. We agree with plaintiff.

A trial court may instruct the jury on "any loss of earnings or impairment of earning capacity" whenever such an in-

struction is "appropriate in light of the evidence in the case." *CJI–Civ.3d* 11:21(4) (1988) (Notes on Use). The trial court's discretion to issue or to refuse to issue this instruction based on "the evidence," must, we deduce, be premised on the presence or absence of the introduction of evidence regarding earnings.

Here, plaintiff presented evidence that, while presently unemployed, she had previously worked as a nurse's aide at a certain rate of compensation. Her testimony, along with that of a medical expert called by defendant, indicates that she would have lifting limitations and sitting and standing limitations from which a reasonable inference arises that a return to work as a nurse's aide would be problematic.

▆▆▆ Recovery of damages may not be denied merely because the amount is difficult to ascertain. Furthermore, and contrary to the assertions of defendant, a party seeking recovery for impairment of future earnings is not required to introduce evidence of an intention to return to work in the future. *Brittis v. Freemon,* 34 Colo. App. 348, 527 P.2d 1175 (1974). Moreover, the trial court has an obligation to present to the jury proper instructions in support of a party's theory of recovery when there is evidence in the record upon which to base such instructions. *Maloney v. Jussel,* 125 Colo. 125, 241 P.2d 862 (1952).

Here, while the evidence as to plaintiff's claim for damages for impairment of future earnings reflected her limited earlier employment and relatively limited compensation therefor, we nevertheless conclude that the evidence was sufficient so as to require an instruction supporting her claim.

▆▆▆ If there is evidence of permanent disability, it is not necessary for a plaintiff to show that she could have earned more money if she had not been injured. *Zertuche v. Montgomery Ward & Co.,* 706 P.2d 424 (Colo.App.1985). And, as defendant concedes on appeal that the testimony was conflicting as to whether plaintiff sustained permanent physical impairment, a jury could properly award damages for diminished earning capacity.

On retrial, upon the presentation of such evidence, the court should properly instruct the jury as to plaintiff's theory of recovery for impairment of future earnings or of earning capacity.

## B.

Plaintiff also contends the trial court erred in instructing the jury not to award damages for economic losses which are eligible for coverage under the Colorado Auto Accident Reparations Act, § 10–4–701, et seq., C.R.S. (1987 Repl.Vol. 4A) (the No–Fault Act). She argues that the No–Fault Act's prohibition against an award of such damages has been overruled by the collateral source rule set forth in § 13–21–111.6, C.R.S. (1987 Repl.Vol. 6A). We disagree.

Section 10–4–713(1), C.R.S. (1987 Repl. Vol. 4A) of the No–Fault Act provides that when losses resulting from an automobile accident are eligible for personal injury protection (PIP) coverage under an insurance policy, such losses are not compensable in a tort action. Thus, if a verdict against a tortfeasor includes an award for losses that are eligible for PIP benefits, the verdict is faulty and subject to correction by the trial court. *See Ramirez v. Veeley,* 757 P.2d 160 (Colo.App.1988) (reduction in amount of verdict required even when defendant failed to object to evidence, jury instruction, and closing argument); *Camacho v. Daffern,* 622 P.2d 610 (Colo.App. 1981).

Section 13–21–111.6 sets forth the procedure to be followed by a trial court after a verdict has been returned in a tort action:

> In any action by a person ... to recover damages for a tort resulting in death or injury to person or property, the court, after the finder of fact has returned its verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict by the amount by which such person ... has been ... indemnified or compensated for his loss by any other person, corporation, *insurance company,* or fund ... *except that the verdict shall not be reduced by the amount by which such person ... has been ... indemnified or compensated by a bene-*

*fit paid as a result of a contract entered into and paid for by or on behalf of such person.* (emphasis added)

■ We agree with plaintiff that PIP benefits paid to an insured party would qualify as "benefit[s] paid as a result of a contract entered into and paid for by or on behalf of such person." However, if separate clauses in the same statutory scheme may be reconciled by one construction but would conflict under a different interpretation, the construction which results in harmony rather then inconsistency should be adopted. *People v. District Court,* 713 P.2d 918 (Colo.1986); *Mooney v. Kuiper,* 194 Colo. 477, 573 P.2d 538 (1978).

■ Here, § 13–21–111.6 specifically states that compensation from an insurance company "shall reduce the amount of the verdict." And, as noted, the No–Fault Act precludes recovery for P.I.P. benefits paid by plaintiff's insurance carrier. If we construe the statutory provisions together so as to give effect to each, the limited restriction on the adjustments a trial court is required to make before the entry of judgment, pursuant to § 13–21–111.6, cannot be interpreted as abrogating the legislative mandate in the No–Fault Act, that PIP benefits are excluded from any recovery obtained in a tort action. *Tate v. Industrial Claim Appeals Office,* 815 P.2d 15 (Colo.1991); *see Marquez v. Prudential Property & Cas. Ins. Co.,* 620 P.2d 29 (Colo.1980); *see also* Restatement (Second) of Torts, § 920A, Comment e at 514–515 (1977).

We conclude that the collateral source rule codified in § 13–21–111.6 does not apply to payment received in the form of PIP benefits. These insurance contracts are excluded from the exception allowing compensation "by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person." Accordingly, the challenged instruction sets forth a proper statement of the law.

We have considered plaintiff's remaining contentions and conclude that they are without merit or are unlikely to occur on retrial.

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

METZGER and RULAND, JJ., concur.